IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T. HOWELL, | ) | CASE NO. 5:16CV1623 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHELLE MILLER, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner James Howell ("Petitioner" or "Howell") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  Howell is detained at the Belmont Correctional

Institution, having been found guilty by a Stark County, Ohio, Court of Common Pleas jury of

one count of domestic violence.  *State v. Howell*, Case No. 2014CR1635 (Stark Cty. Common

Pleas Ct., filed December 12, 2014).  At sentencing, the trial court sentenced Howell to thirty-six

months in prison, to be served consecutively to another sentence in a separate criminal case.

Doc. 10-1, pp. 7-8.

On June 27, 2016, Howell filed his Petition for Writ of Habeas Corpus setting forth nine

grounds for relief.  Doc. 1, pp. 5-32.  This matter has been referred to the undersigned Magistrate

Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully

below, Grounds 1, 2 and 3 and a portion of Grounds 6 and 8 fail on the merits, the remainder of

Ground 6 is procedurally defaulted and the remainder of Ground 8 is not cognizable, and Howell

abandoned Grounds 4, 5, 7 and 9.  Thus, the undersigned recommends that Howell's Petition for

Writ of Habeas Corpus (Doc. 1) be **DISMISSED in part** and **DENIED in part**.[1]

---

[1]  The grounds in the petition that are procedurally defaulted, not cognizable and abandoned result in a dismissal; the grounds in the petition that are addressed on the merits result in a denial.

# I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

## A.  State Court Action

### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Stark County Court of Appeals, Fifth Appellate District of Ohio:[2]

{¶ 2} Around 3:00 a.m. on September 30, 2014, Ryan Rider was awakened in his home located on Nicholas Place in Canton by loud screaming outside his home. Upon hearing this screaming, Rider looked outside of his bedroom window to see who was screaming for help. He noticed a woman on a neighbor's porch doing the screaming. Rider also saw a man pulling this woman, grabbing at her and the little child she was holding in her arms. Rider noticed that the woman was scared and the man seemed angry. Rider called 9–1–1 and waited for the police to arrive.

{¶ 3} The neighbor whose porch the man and woman were standing on was Sherry Cornelius. The screaming on her porch and pounding on the front door awakened her. Cornelius estimated that the screaming and pounding lasted some five minutes, and she heard one of the people cry in a muffle voice, "Help me." Cornelius also made a 9–1–1 call.

{¶ 4} Elishalin Robinson and Howell lived on Nicholas Place, along with Robinson's three children, two of which she shared with Howell. Robinson testified that she did not remember Howell punching her, and that she simply woke up from her sleep bleeding. She testified that she could not understand why she was bleeding, and had a panic attack. Howell was trying to calm her down, but she "spazzed out" and ran out of the house and down the street. Robinson admitted that she might have told the police and paramedics that Howell had punched her in the face, causing her facial injuries. Finally, Robinson admitted that she continued to maintain contact with Howell since his arrest via letters and phone calls from jail. Robinson admitted that Howell told her in these letters and phone calls that she should blame her condition that night on her medication. She also

---

[2]  Howell has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

claimed to have no memory of banging on neighbors' doors and yelling for their help, or of making a 9–1–1 call with her cell phone.

{¶ 5} Canton Police Officer Eric Lee responded to the several 9–1–1 calls to the Nicholas Place location and found Robinson. The calls alerted him to the fact that a black female had been running down the street with a black male chasing her, and that the female had a young child with her and was bleeding about her face. Robinson fit this description of the frightened and injured woman. Lee asked her what had happened to her, and Robinson told him that she had been asleep on the sofa when Howell jumped on top of her and started punching her in the face for no reason. Lee was unable to locate Howell at this time.

{¶ 6} James Dull, a Canton fire fighter and paramedic, also responded to the 9[-]1–1 calls. He found Robinson to be emotionally distraught and with obvious facial injuries that had caused bleeding about the face. Dull determined that Robinson was not intoxicated or under the influence, and was oriented as to person, place, and time. Dull also checked Robinson's motor sensory impulses, which may reveal possible head injuries, and determined that her impulses were fine. Dull asked Robinson as well what had happened to her for purposes of treating her. Robinson told him that she had been asleep on the couch when Howell began punching her in her face for no reason. Robinson felt a pop in her nose while being punched, and started bleeding. After stabilizing Robinson, Dull transported her to Aultman Hospital for treatment.

{¶ 7} Robinson admitted that she had recently been angry with Howell because of an affair he was involved in with another woman. She admitted to having several mental issues, including PTSD, ADHD, and being a manic-depressive. In addition to being on four different medications, she was also consuming alcohol on the night of the incident. Robinson testified that she had recently begun taking Paxil, and one of the side effects she was experiencing was unexplained bleeding.

*State v. Howell*, 2015 WL 5722820, at ** 1-2 (Ohio Ct. App. Sept. 29, 2015).

### 2. Procedural History

On November 4, 2014, a Stark County Grand Jury indicted Howell on one count of domestic violence, R.C. § 2919.25(A).  Doc. 10-1, p. 4.  Howell, through counsel, pleaded not guilty.  Doc. 10-1, p. 5.  The jury found Howell guilty.  Doc. 10-1, p. 6.  On December 8, 2014, the trial court sentenced Howell to thirty-six months in prison, to be served consecutively to another sentence in a separate criminal case.  Doc. 10-1, pp. 7-8.

### B. Direct Appeal

Howell, through counsel, timely filed an appeal to the Ohio Court of Appeals.  Doc. 10-1, p. 11.  In his brief, he raised the following assignments of error:

> 1. The defendant's conviction for one count of domestic violence in violation of R.C. 2919.25 was against the manifest weight and sufficiency of the evidence.
>
> 2. The appellant's sentence was contrary to law.

Doc. 10-1, p. 13.  On September 29, 2015, the state Court of Appeals affirmed the trial court's judgment.  Doc. 10-1, pp. 53-68.

### C. Ohio Supreme Court

On November 6, 2015, Howell, pro se, filed an appeal to the Ohio Supreme Court.  Doc. 10-1, p. 69.  In his memorandum in support of jurisdiction, Howell raised the following propositions of law:

> I. Art I section 10 note 34. Fair Trial; Due Process; Equal Protection was denied the appellant as the court and the appellate court gave sentence beyond the recommended six months mandatory. The length of the sentence was because the appellant was left by the appellant when the appellant was in a state of hysteria. The appellant being accustom to the acts of the appellant knew the victim would call or alert the authorities that the parent of the children were the appellant and the appellant normally would get the children and keep them until the victim doctor treated the victim. As the allegation began to unfold the appellant requested the expert witness of the treating physician for the victims conditions. The office of the Prosecution and the effective counsel failed to produce by Discovery Procedure 16 evidence favorable to the appellant. In the actions of the court the appellant was denied due process and the process demanded the appellant be allowed the subpoena of the court for the expert witness by conducting the procedure for subpoena by requesting the effective counsel to such. The counsel gave the office of the prosecution favor by not acquiring the evidence that the victim spoke in multi personalities and would accuse the appellant in one of them, but protect him as the parent of the children they birthed. In the use of the ways of the expert the court allows the evidence to be explained by the expert as to the questioning by the office of the Prosecution as the jury and the court may comprehend how and why such acts occur and why the cause may be allowed for innocence or guilt. The innocence would have prevailed for the appellant as treating physician would have justified the statements of the victim being that of her imagination and the conversation was between her personalities and they were being answered and not the questioning officers. To date the court is again requested for equal protection of law of the State of Ohio.
>
> II. Art I section 10 note 35 evidence allows the sentence to be contrary to law and that the witness could only identify shadows. The neighbors gave not adequate description of the

appellant or anyone that could assist the officers upon arrival at the address of the victim. The officers gave no reply of how the use of the evidence could be related to the appellant. The rantings of the victim were thought to conducive enough to gain arrest of the appellant. The appellant requested the officers to contact the treating physician as the appellant had requested in the past. The officers refused and the office of the Prosecution would not respond. The effective counsel gave not a consideration as the competent attorney demands for defense could not conceive the victim being a mental health patient. As the court gave the events consideration[n] there is not one expert to convince the procedure they had the appropriate training to determine the cause of the victims bleeding. The Office of the Prosecution evidence was not reliable to the court but the favor of the office of the prosecution is they are trusted to be diligent and have without doubt the proper allegation with evidence to give the court favoritism to the office of the prosecution. As the proceedings gave process the appellant was lost to the sight of the blood and the victim continued statements of the I do not want to sign a complaint. I will however bring complaint about him wiping me and causing me to bleed. Then why am I bleeding my son would not hit me. But he would jump on me and hit me. There was no one present with the victim to the knowledge of the officers upon the arrival to 911 call and or to the neighbors calling in the 911. The best the officers could gather the persons walking by the houses may or may not have been in presence of the victim. As the court and jury listen to the none expert witness of the bleeding forms were from the area of the couch and the victim stated the victim awake bleeding and identify the appellant not but stated that he was upon her. The Office of the Prosecution assumed the appellant was the person the victim was speaking of. Untrained in mental health they attacked the appellant. [Sic]

Doc. 10-1, pp. 76-77.  On February 10, 2016, the Ohio Supreme Court declined to accept

jurisdiction pursuant to S. Ct. Prac. Rule 7.08(B)(4).  Doc. 10-1, p. 108.

### D.  Application to Reopen Appeal pursuant to Rule 26(B)

On December 8, 2015, Howell, pro se, filed an Application to Reopen pursuant to App.

R. 26(B) with the Ohio Court of Appeals.  Doc. 10-1, p. 109.  He alleged that he received

ineffective assistance of appellate counsel when appellate counsel failed to set forth the

following assignments of error:

1. Trial counsel provided ineffective assistance of counsel, in violation of defendant's right to counsel, as protected by the 6th Amendment to the United States [when he failed to do the following:] secure an expert witness at trial, move for a mistrial, object to the prejudicial remarks made by the prosecution and by the [trial] court, and file a motion to suppress (limine) the defendant's prior record.

2. The trial court denied the appellant[] of his 6th Amendment right to confrontation and 14th Amendment due process rights to present a defense and fair trial when the appellant

was not allowed to cross examine the victim on her prior testimony given at the grand jury.

3. The trial court erred and violated the appellant's 14th Amendment due process rights to a fair trial.

4. The state violated appellant's 14th Amendment due process right to a fair trial when the prosecutor made prejudicial remarks during trial.

5. The state violated the appellant's 14th Amendment equal protection rights when it abused its discretion of peremptory challenges.

Doc. 10-1, pp. 110-118.  On January 26, 2016, the state Court of Appeals issued an opinion

denying Howell's application to reopen.  Doc. 10-1, pp. 122-129.

Howell, pro se, filed a timely appeal to the Ohio Supreme Court.  Doc. 10-1, p. 132.  In

his memorandum in support of jurisdiction, Howell asserted the following propositions of law:

I. Trial counsel provided ineffective assistance of counsel, the Fifth District abused their discretion denying the reopening of this appeal in violation of appellant's right to counsel, as protected by the 6th Amendment to the United States Constitution.

II. Appellate counsel failed to raise on direct appeal that "The trial counsel failed to move for a mistrial" and the Fifth District Court of Appeals abused their discretion by overruling appellant's application to reopen the appeal in violation of the Fifth, Sixth Amendment to the USC.

III. Appellate counsel failed to raise that trial counsel failed to object to errors of prosecutorial misconduct and the Fifth District Court of Appeals abused their discretion overruling appellant's application to reopen his appeal in violation of the Fourth, Fifth and Sixth Amendments to the U.S. Constitution.

IV. The trial court denied the appellant his 6th Amendment right to confrontation and 14th Amendment due process rights to present a defense and fair trial when the appellant was not allowed to cross examine the victim on her prior testimony given at the Grand Jury, and the Fifth District Court of Appeals abused their discretion by denying his application to reopen his appeal based upon ineffective assistance of appellate counsel.

V. The trial court erred and violated the appellant's 14th Amendment due process rights to a fair trial. The Fifth District abused their discretion overruling appellant's application to reopen for appellate counsel's ineffective assistance for omitting this error. Further violating appellant's 14th Amendment due process rights and equal protection of the laws.

VI. The state violated appellant's 14th Amendment due process rights to a fair trial when the prosecutor made prejudicial remarks during trial. The Fifth District abused their

discretion overruling appellant's application to reopen for appellate counsel's ineffective assistance for omitting this error. Further violating appellant's 14th Amendment due process rights and equal protection of the laws.

VII. The state violated the appellant's 14th Amendment equal protection rights when it abused its discretion of peremptory challenges. The Fifth District abused their discretion overruling appellant's application to reopen for appellate counsel's ineffective assistance for omitting this error. Further violating appellant's 14th Amendment due process rights and equal protection of the laws.

Doc. 10-1, pp. 133-134. On May 18, 2016, the Ohio Supreme Court declined to accept

jurisdiction of the appeal pursuant to S.C.Prac.R. 7.08(B)(4). Doc. 10-1, p. 174.

### E. Post-conviction Petition

On April 12, 2016, Howell, pro se, filed a motion for leave to file a petition for post-

conviction relief with the state trial court. Doc. 10-1, p. 175. Howell outlined the following

claims to be submitted:

1. Ineffective assistance of trial counsel, under the Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution.

2. Defendant was denied a fair trial under the Sixth Amendment, U.S. Constitution Section 5, Article I, Ohio Constitution.

3. Defendant was denied due process of law under the Fifth and Fourteenth Amendment, U.S. Constitution Section 16, Article I, Ohio Constitution.

Doc. 10-1, p. 176. On April 14, 2016, the state trial court denied Howell's petition for post-

conviction relief because it was untimely, barred by *res judicata*, and meritless. Doc. 10-1, pp.

180-182. Howell did not appeal the trial court's judgment. Doc. 10-1, pp. 183-186.

### F. Federal Habeas Petition

On June 17, 2016, Howell, pro se, filed his Petition for a Writ of Habeas Corpus. Doc. 1.

He listed the following grounds for relief:

**Ground One**: Trial counsel provided ineffective assistance of counsel, the Fifth District abused their discretion denying the reopening of this appeal in violation of petitioner's right to counsel, as protected by the 6th Amendment, due process and equal protection

clauses protected under the 5th, 6th and Fourteenth Amendments to the United States Constitution.

     **Supporting facts**: A court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. The Supreme Court of Ohio has defined "abuse of discretion" as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken. The following error of the trial court was not raised by Appellate Counsel as argued in Appellant's Application to reopen pursuant to Ohio App. R. 26(B). The Fifth District abused their discretion by overruling said application.

**Ground Two**: Appellate counsel failed to raise on direct appeal that "the trial counsel failed to move for a mistrial" and the Fifth District Court of Appeals abused their discretion by overruling petitioner's application to reopen the appeal in violation of the Fifth and Sixth Amendments to the USC.

     **Supporting facts**: The following error of the trial court was not raised by Appellate Counsel as argued in Petitioner's Application to reopen pursuant to Ohio App. R. 26(B). The Fifth District abused their discretion by overruling said application. Trial counsel in this matter provided ineffective assistance under the 6th Amendment when he failed to move for a mistrial. During trial the court and the state would make references to the jury that the appellant had two prior domestic violence convictions. Allowing the jury to hear about the appellant's prior convictions took away his constitutional rights of being found guilty of a reasonable doubt and was so prejudicial that the only proper remedy would have been to move for a mistrial.

**Ground Three**: Appellate counsel failed to raise that trial counsel failed to object to errors of prosecutorial misconduct and the Fifth District Court of Appeals abused their discretion overruling appellant application to reopen his appeal in violation of the Fourth, Fifth and Sixth Amendments to the US Constitution.

     **Supporting facts**: The following error of the trial court was not raised by Appellate Counsel as argued in Petitioner's Application to reopen pursuant to Ohio App. R. 26(B). The Fifth District abused their discretion by overruling said application.

**Ground Four**: The trial court denied the petitioner his 6th Amendment right to confrontation and 14th Amendment due process rights to present a defense and fair trial when the petitioner was not permitted to cross examine the victim on her prior testimony given at the grand jury, to reopen his appeal based upon ineffective asst. of appellate counsel, and the Fifth District Court of Appeals abused their discretion by denying his application to reopen the appeal for review of this error.

     **Supporting facts**: The following error of the trial court was not raised by Appellate Counsel as argued in Petitioner's Application to reopen pursuant to Ohio App. R. 26(B). The Fifth District abused their discretion by overruling said application. The trial court abuse its discretion and violated the appellant's 6th Amendment rights to confrontation, 14th Amendment due process rights to a fair trial and 14th Amendment due process (6) rights to present a complete defense when the court refused to allow the grand jury testimony given by the victim to be admitted as trial.

**Ground Five**: The trial court erred and violated the petitioner's 14th Amendment due process rights to a fair trial. The Fifth District abused their discretion overruling petitioner's application to reopen for appellate counsel's ineffective assistance for omitting this error. Further violating appellant's 14th Amendment due process rights and equal protection of the laws.

      **Supporting facts**: The following error of the trial court was not raised by Appellate Counsel as argued in Petitioner's Application to reopen pursuant to Ohio App. R. 26(B). The Fifth District abused their discretion by overruling said application. The appellant argues the trial court abused its discretion and violated the appellant's 14th Amendment due process rights to a fair trial when it allowed other extrinsic acts not attributable to the charged offense, to be admitted at trial. Evid. R. 404(B) states, Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of accident.

**Ground Six**: The state violated petitioner's 14th Amendment due process rights to a fair trial when the prosecutor made prejudicial remarks during trial. The Fifth District abused their discretion overruling petitioner's application to reopen for appellate counsel's ineffective assistance for omitting this error. Further violating appellant's 14th Amendment due process rights and equal protection of the laws.

      **Supporting facts**: The following error of the trial court was not raised by appellate counsel as argued in petitioner's application to reopen pursuant to Ohio App. R. 26(B). The Fifth District abused their discretion by overruling said application. The state throughout the trial made several prejudicial references to the Petitioner's prior convictions inflaming the jury's mind to convict the petitioner on his past and not on the conduct at hand. The 6th Circuit Court Of Appeals has referred to these type of egregious and prejudicial remarks as misconduct on the prosecutions behalf and amounts to a denial of Due Process. The 6th Circuit held that if the prosecution's misconduct satisfies the 4 prong test found in Washington, the state violated the appellant's 14th Amendment Due Process rights. Being said the states conduct during trial satisfies the 4 prong test and the appropriate remedy is new trial.

**Ground Seven**: The state violated the appellant's 14th Amendment equal protection rights when it abused its discretion of peremptory challenges. The Fifth District abused their discretion overruling appellant's application to reopen for appellate counsel's ineffective assistance for omitting this error. Further violating appellant's 14th Amendment due process rights and equal protection of the laws.

      **Supporting facts**: The following error of the trial court was not raised by Appellate Counsel as argued in Petitioner's Application to reopen pursuant to Ohio App. R. 26(B). The Fifth District abused their discretion by overruling said application. Applying the 3 prong test established the U.S. Supreme Court, the prosecution abused it discretion of peremptory challenges when the state excluded all African American jurors with no valid reason as to why they were being excluded.

      The Petitioner asserts in this matter (1) he belongs to cognizable racial group and (2) the prosecution abused the use peremptory challenges, because the state only used

challenges on blacks and (3) the prosecutor used peremptory challenges to exclude the veniremen from the petit jury on account of their race which amounts to racial discrimination, because the state did not move to exclude any other race. Therefore the state's challenges were used based on race. This error is what has been referred to as structural error and is subject to automatic reversal.

**Ground Eight:** The petitioner's conviction for one count of domestic violence in violation of <u>R.C. 2919.25</u> is against the manifest weight and sufficiency of the evidence. Conviction is obtained in violation of the 5th, 6th and 14th Amendments to the United States Constitution.

    **Supporting facts:** Petitioner challenges the sufficiency of the evidence; he further contends his conviction is against the manifest weight of the evidence produced by the state at trial. A review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.

**Ground Nine:** The appellant's sentence was contrary to law in violation of the 14th Amendment to the United States Constitution Equal Protection Clause.

    **Supporting facts:** Howell argues that the trial court abused its discretion in imposing the maximum prison sentence. Howell does not specifically challenge the trial court's imposition of consecutive sentences. The two-step approach set forth in <u>State v. Kalish</u>, 120 Ohio St.3d 23, 2008 Ohio 4912, 896 N.E.2d 124 no longer applies to appellate review of felony sentences. We now review felony sentences using the standard of review set forth in <u>R.C. 2953.08</u>.

<u>R.C. 2953.06(G)(2)</u> provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under <u>R.C. 2929.13(B)</u> or <u>(D)</u>, <u>2929.14(B)(2)(e)</u> or <u>(C)(4)</u>, or <u>2929.20(I)</u>, or the sentence is otherwise contrary to law. [Sic]

Doc. 1, pp. 5-17.[3] On December 12, 2016, Respondent filed a Return of Writ (Doc. 10), Howell

filed a Traverse on May 11, 2017 (Doc. 14), and Respondent filed a timely reply (Doc. 15).

## II. Standard of Review under AEDPA

---

[3] Howell also provided 11 pages of explanatory text attached to his Petition relevant to each ground. The undersigned has not reproduced all 11 pages here, but considers Howell's specific arguments, *infra*, in the analysis section.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must

present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501

U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman,* 501 U.S. at 750.

**Merits Review**. In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002);

13

*Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Howell sets forth nine grounds for relief in his Petition.  Doc. 1, pp. 9-16.  The undersigned recommends the Court find that Grounds 1, 2 and 3 and a portion of Grounds 6 and 8 fail on the merits, the remainder of Ground 6 is procedurally defaulted and the remainder of Ground 8 is not cognizable, and Howell abandoned Grounds 4, 5, 7 and 9.

### A. Grounds 1-7, Ineffective Assistance of Appellate Counsel

The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to ineffective assistance of appellate counsel claims on federal habeas review.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  As the Sixth Circuit recently summarized,

> AEDPA deference is made more deferential still where the underlying substantive law requires this court to defer to another reasoned decision-maker on review. As previously discussed, [] an ineffective-assistance-of-counsel claim is governed by the test articulated

> in *Strickland*, where "counsel is strongly presumed to have rendered adequate assistance
> and made all significant decisions in the exercise of reasonable professional judgment."
> 466 U.S. at 690, 104 S.Ct. 2052. By itself, this is a deferential standard that is challenging
> for a claimant to meet. Where the claimant is a state habeas petitioner whose claims are
> subject to AEDPA, that standard is raised even higher, as the petitioner must show that
> the state court's application of *Strickland* was itself unreasonable. This amounts to a
> "doubly deferential standard of review that gives both the state court and the defense
> attorney the benefit of the doubt." *Burt v. Titlow*, —— U.S. ——, 134 S.Ct. 10, 13, 187
> L.Ed.2d 348 (2013) (internal quotation omitted) (emphasis added). Stated differently,
> AEDPA requires us to "take a highly deferential look at counsel's performance through
> the deferential lens of § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct.
> 1388, 179 L.Ed.2d 557 (2011) (internal quotations omitted).

*Kelly v. Lazaroff*, 846 F.3d 819, 831-832 (6th Cir. 2017).  Appellate counsel is not obligated to

advance every possible argument on appeal, *Jones v. Barnes*, 463 U.S. 745, 750–754 (1983), nor

is counsel ineffective for failing to raise an issue that lacks merit, *Willis v. Smith*, 351 F.3d 741,

745 (6th Cir. 2003).

### 1. Ground 1

In Ground 1, Howell argues that appellate counsel was ineffective for failing to raise, on

direct appeal, ineffectiveness of trial counsel for failing to secure an expert witness at trial.  Doc.

1, p. 21.  Howell asserts that trial counsel had in his possession the grand jury testimony of the

victim and, therefore, knew that the victim took psychotropic medications, "tends to often

sleepwalk," and had suffered self-inflicted injuries as a result.  Id.  He contends that trial counsel

should have retained a medical expert to review the victim's medical chart and testify that the

victim's injuries were self-inflicted.  Id.

The Ohio Court of Appeals set forth the *Strickland* standard it applied to Howell's claims

and considered Howell's argument:

> At trial, the victim admitted that she had recently been angry with Howell because of an
> affair he was involved in with another woman. She admitted to having several mental
> issues, including PTSD, ADHD, and being a manic-depressive. In addition to being on
> four different medications, she was also consuming alcohol on the night of the incident.
> Robinson testified that she had recently begun taking Paxil, and one of the side effects
> she was experiencing was unexplained bleeding. *Howell I at* ¶7.

As the victim admitted to the facts that Howell seeks to prove via an expert witness and cross-examination with grand jury testimony, Howell cannot demonstrate prejudice. We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher* (1967), 12 Ohio St. 2d 107, 233 N.E. 2d 137; *State v. Stanton* (1968), 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94; *Wachovia Mtg. Corp. v Aleshire*, Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16. See, also, App.R. 12(D).

Accordingly, we find that these issues raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal***" *State v. Smith* 95 Ohio St. 3d 127. 2002-Ohio-1753.

Doc. 10-1, pp. 125, 127-128.

Howell does not show that the Ohio Court of Appeals' decision was contrary to or involved an unreasonable application of Supreme Court precedent; namely, that it was unreasonable for the Ohio Court of Appeals to find that he was not prejudiced by appellate counsel's failure to raise on direct appeal trial counsel's failure to obtain an expert witness. Despite Howell's assertion that trial counsel's possession of the victim's grand jury testimony should have caused him to obtain an expert, he does not explain why the grand jury testimony is important on this point, let alone that it prejudiced him.  He agrees that the statements the victim made to the grand jury and the statements she made at trial "were consistent ... except for one major detail and this is one of the main reasons why a[n] expert witness was needed": to the grand jury the victim testified that she fell asleep upstairs and woke up in the dining room but at trial the victim testified that she woke up on the couch.  Doc. 14, p. 11.  Howell fails to demonstrate that this alleged inconsistency in the victim's testimony should have caused trial counsel to obtain an unidentified expert who would have purportedly testified as to unidentified theories about sleepwalking and self-harm and that counsel's failure to do so was ineffective and prejudicial.

Moreover, the jury heard the victim's testimony about her mental health issues and her medications and their side effects, as the state Court of Appeals observed.  The jury also heard, among other damning evidence, the attending police officer testify that neighbors had called 911 to report the victim and a man arguing on a porch and the victim going to the neighbor's house and then running down the street while the man followed her, when the officer arrived at the scene the victim told him she woke up on the couch to Howell punching her in the face and that she grabbed her four-year-old child and fled, the victim had multiple injuries to her face, there were multiple bloodstains on the couch and the floor where the victim reported that the assault occurred, and the jury saw photos of the crime scene and the victim's injuries.  Doc. 10-2, pp. 210-215.

Ground 1 fails on the merits.

### 2. Ground 2

In Ground 2, Howell argues that appellate counsel was ineffective for failing to raise, on direct appeal, ineffectiveness of trial counsel for failing to move for a mistrial after the jury heard the prosecutor and trial court refer to Howell's two prior domestic violence convictions.  Doc. 1, p. 7.  The Ohio Court of Appeals considered this claim,

> In this case, Appellant was found guilty of one count of domestic violence, a felony of the third degree. R.C. 2919.25(A) and (D) (4) state in pertinent part:
>
> > (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
> > * * *
> > (D)(1) Whoever violates this section is guilty of domestic violence, and the court shall sentence the offender as provided in divisions (D)(2) to (6) of this section.
> > * * * *
> > (4) If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree.

If the existence of a prior offense is an element of a subsequent crime, the state must prove the prior conviction beyond a reasonable doubt and the factfinder must find the previous conviction has been established in order to find the defendant guilty on the subsequent offense. *State v. Day*, 99 Ohio App.3d 514, 517, 651 N.E.2d 52 (12th Dist. 1994). Additional evidence beyond a certified copy of a conviction must be offered. *State v. King*, 5th Dist. Stark No.1999CA0064, unreported, 2000 WL 530048, *4 (Mar. 13, 2000), citing *State v. Blonski*, 125 Ohio App.3d 103, 109, 707 N.E.2d 1168 (9th Dist.1997). R.C. 2945.75 sets forth one way, but not the exclusive way, of proving prior convictions. *State v. Chaney*, 128 Ohio App.3d 100, 105, 713 N.E.2d 1118 (12th Dist.1998).

In the case at bar, the two prior domestic violence convictions were elements of the crime for which Howell was being tried. The jury found that Howell had two prior domestic violence convictions. (3T. at 314). R.C. 2929.12(D)(2). Accordingly, appellant's second, third, fourth and sixth claims as outlined above are without merit.

Accordingly, we find that these issues raise "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal***" *State v. Smith* 95 Ohio St. 3d 127, 2002-Ohio-1753.

Doc. 10-1, pp. 126-127.

Howell does not assert that the Ohio Court of Appeals' decision was unreasonable.  It was not unreasonable.  In his Traverse, he argues, for the first time, that trial counsel should have moved for a mistrial based on the prosecutor's statements to the jury that it should disregard the victim's statement that she is not a victim of domestic violence because such statements disavowing victimhood are typical of domestic violence victims.  Doc. 14, p. 13.  First, a court is not required to address a theory of relief asserted only in a traverse but not in the habeas petition.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  Second, Howell did not argue these facts with this legal theory to the Ohio state courts.[4]  Thus, to the extent Howell intends to assert this argument here, it is procedurally defaulted.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) ("A claim may only be considered 'fairly presented' [for jurisdictional purposes] if

---

[4]  Howell argued to the Ohio Court of Appeals that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel for trial counsel not moving for a mistrial based on the prosecutor's reference to Howell's prior domestic violence convictions.  See Doc. 10-1, p. 111.

18

the petitioner asserted both the factual and legal basis for his claim to the state courts[,]" citing *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987)).

Ground 2 fails on the merits.

### 3. Ground 3

In Ground 3, Howell argues that appellate counsel was ineffective for failing to raise, on direct appeal, ineffectiveness of trial counsel for failing to object to prosecutorial misconduct. Doc. 1, p. 8.  Howell identifies the prosecutorial misconduct in this case as the prosecutor stating, during opening arguments, "the victim is going to come in here and admit that she was not a victim of domestic violence, and to disregard this information because this is what a typical victim of domestic violence does."  Doc. 1, p. 23.

The Ohio Court of Appeals overlooked this claim and did not discuss it.  The undersigned, therefore, considers the claim in Ground 3 *de novo*.  Ground 3 fails on the merits. First, the prosecutor did not make statements during opening argument characterized above.  See Doc. 10-1, pp. 135-141(state's opening argument).  Next, Howell's defense attorney *did* object to statements made by the prosecutor during closing argument similar to those complained of by Howell (Doc. 10-1, p. 250); accordingly, trial counsel was not ineffective for failing to object because he did object.  Finally, it cannot be said that the prosecutor's comment regarding domestic violence victims' tendencies to recant prejudiced Howell when also submitted into evidence were the 911 calls made by the victim and neighbors, a neighbor's testimony that he saw the victim outside on the porch with a man who seemed angry pulling her and calling her a "bitch," the victim testifying that she told the police and paramedics at the time they treated her that she woke up to Howell punching her in the face, and the victim admitting that Howell communicated with her while he was in jail after being arrested and told her to go to court and

talk about her medications as the reason she had facial injuries.  Doc. 10-1, pp. 148-149, 216, 180, 190, 170, 171-173.

Howell also argues that appellate counsel was ineffective for failing to raise, on direct appeal, ineffectiveness of trial counsel for failing to object to prejudicial remarks by the trial court during opening arguments, to wit: that Howell had two prior domestic violence convictions.  Doc. 1, p. 23.  But Howell's two prior domestic violence convictions were elements of the crime for which he was being tried, as the Ohio Court of Appeals observed.  *See, e.g., State v. Day*, 651 N.E.2d 52 (Oh. Ct. App. 1994) (explaining that R.C. 2919.25(D) provides that a prior domestic violence conviction raises the degree of a later offence from a misdemeanor to a felony and is, therefore, an element of the later offence).  Accordingly, appellate counsel was not ineffective for failing to raise ineffective assistance of trial counsel based on trial counsel's failure to object to the trial court setting forth the elements of the crime Howell was charged with.

Ground 3 fails on the merits.

### 4. Ground 4

In Ground 4, Howell argues that appellate counsel was ineffective for failing to raise, on direct appeal, that the trial court erred by not permitting Howell to introduce the victim's grand jury transcripts into evidence and not permitting him to cross examine her prior testimony.  Doc. 1, p. 24.  In his Traverse, Howell states that he "abandons this claim."  Doc. 14, p. 16.

### 5. Ground 5

In Ground 5, Howell argues that the trial court violated Evidence Rule 404(B) when it permitted evidence of prior crimes.  Doc. 1, p. 26.  In his Traverse, Howell states that he "abandons this claim."  Doc. 14, p. 16.

### 6. Ground 6

In Ground 6, Howell argues that appellate counsel was ineffective for failing to raise, on direct appeal, a due process violation resulting from the prosecutor making prejudicial remarks during trial referencing Howell's prior convictions and indicating during closing argument that domestic violence victims commonly do what the victim in this case did—initially report domestic violence then change their statements when the state acts upon the complaint.  Doc. 1, p. 23.  As explained above, Howell's prior convictions were an element of his charged offense under Ohio law.  Thus, appellate counsel was not ineffective for failing to raise this issue on direct appeal.  As for Howell's argument regarding the prosecutor's comments about domestic violence victims, this argument is procedurally defaulted because Howell presented it to the Ohio Court of Appeals in his Rule 26(B) Application as ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel for failing to object to the prosecutor's statements about domestic violence victims.  This claim was considered by the undersigned in reference to Ground 3, supra.  Howell did not present a claim to the state courts that appellate counsel was ineffective for failing to raise the issue of procedural misconduct as a stand-alone claim. See Doc. 10-1, pp. 110-119.  Accordingly, such a claim is procedurally defaulted and Howell cannot demonstrate prejudice or a fundamental miscarriage of justice to overcome the procedural default.  *See Williams*, 460 F.3d at 806; *Coleman*, 501 U.S. at 750.

### 7. Ground 7

In Ground 7, Howell argues that appellate counsel was ineffective for failing to raise, on direct appeal, an equal protection violation pertaining to the prosecutor's using peremptory challenges to exclude all African American jurors because of their race.  Doc. 1, p. 14.  In his Traverse, Howell states that he "abandons this claim."  Doc. 14, p. 18.

### B. Ground 8

In Ground 8, Howell argues that his conviction is against the manifest weight of the evidence and the sufficiency of the evidence.  Doc. 1, p. 15.  His manifest weight claim fails because federal habeas corpus relief is available only to correct federal constitutional violations, 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010), and a claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas petition.  *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).

As for Howell's sufficiency of the evidence claim, he raised it on direct appeal and the Ohio Court of Appeals considered his claim, explaining,

> {¶ 13} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*; *see also McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146 ; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.
>
> *        *        *
>
> {¶ 16} To find Howell guilty of domestic violence the trier of fact would have to find beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Family or household member" includes "A spouse, a person living as a spouse, or a former spouse of the offender" R.C. 2919.25(F)(1)(a)(i). A "person living as a spouse" includes "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). R.C. 2901.22 Culpable mental states, provides:
>
>> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence

of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 17} Howell does not dispute that at all relevant times Robinson was a family or household member, or a person living as a spouse.

{¶ 18} Specifically, Howell contends that the state was unable to meet their burden of showing that he caused or attempted to cause physical harm to Robinson. Howell argues Robinson testified that he was not striking her, but was instead trying to calm her down and help clean her up. During her testimony, Robinson stated that she believed that she sustained the injuries because of a sleepwalking incident, in conjunction with various medications she was taking that were causing her to easily bruise. Further, Howell contends Robinson testified that she never saw him strike her, and that upon her waking up he was calming her down and trying to help her.

{¶ 19} In the case at bar, the neighbors testified that a scared and frightened woman awakened them. One neighbor also noticed an angry man pulling at her. Both of these neighbors were concerned enough to call 9–1–1.

{¶ 20} In the case at bar, the jury heard the 9–1–1 call that Robinson made as she was running down the street. (T. at 164). Robinson admitted that she was banging on doors and yelling for help. (T. at 165). Robinson further admitted that she had told both the police and the personnel at the hospital that Howell had punched her in the face. (T. at 167; 170). Robinson was treated for contusions to the face. (T. at 168). The jury was shown photographs of the bloody couch inside the home. (T. at 170).

{¶ 21} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Howell committed the crime of domestic violence. We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support Howell's conviction.

*Howell*, 2015 WL 5722820, at *2-4.

Howell, disregarding the evidence cited by the state Court of Appeals, contends that the victim "recanted her statement as soon as she could do it, which was a[t] the grand jury."  Doc. 1, p. 29.  But a reasonable person could have concluded that, despite the victim later recanting her statement (after communicating with Howell), the victim's behavior and statements (in addition to other evidence such as photos and the neighbors' 911 calls) on the night of the assault were more credible then her changed testimony.  It cannot be said, therefore, that the Ohio Court of Appeals' decision was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 103.

Therefore, a portion of Ground 8 is not cognizable and the remainder fails on the merits.

### C. Ground 9

In Ground 9, Howell argues that the trial court sentenced him to the maximum prison sentence in violation of the equal protection clause because it failed to enunciate all the factors it considered when sentencing him as required by R.C. 2929.14(C)(4).  Doc. 1, p. 17, 31.  In his Traverse, Howell states that he "abandons this claim[]."  Doc. 14, p. 22.

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Howell's habeas Petition be **DISMISSED** in part and **DENIED** in part because Grounds 1, 2 and 3 and a portion of Grounds 6 and 8 fail on the merits, the remainder of Ground 6 is procedurally defaulted and the remainder of Ground 8 is not cognizable, and Howell abandoned Grounds 4, 5, 7 and 9.

Dated: July 14, 2017

_____
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).