IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

James T. Howell,                          Case No. 5:16 CV 1623

           Petitioner,           MEMORANDUM OPINION
                                          AND ORDER
     -vs-
                                          JUDGE JACK ZOUHARY
Michelle Miller,

           Respondent.

## INTRODUCTION

Petitioner *pro se* James Howell filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, asserting nine grounds for relief (Doc. 1). The case was referred to Magistrate Judge Kathleen Burke for a Report and Recommendation (R&R). The State, through Respondent Warden Michelle Miller, filed a Return of Writ (Doc. 10), and Howell filed a Traverse (Doc. 14). Judge Burke recommended this Court dismiss the Petition in part and deny the Petition in part (Doc. 16), and Howell timely objected (Doc. 17). This Court has reviewed *de novo* the portions of the R&R to which Howell objected. *See* U.S.C. § 636(b)(1); *Hill v. Duriron Co.*, 656 F.2d 1208, 1213 (6th Cir. 1981).

## BACKGROUND

Howell does not object to the factual background outlined in both the R&R and the Ohio court of appeals decision, which is presumed accurate. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Therefore, this Court adopts those facts (Doc. 16 at 2–10).

**DISCUSSION**

The Petition raises nine grounds for relief, but Howell abandoned grounds four, five, seven, and nine in his Traverse (Doc. 14 at 16, 18, 22). The R&R recommends this Court dismiss the Petition with respect to those grounds, as well as portions of grounds six and eight (Doc. 16). With respect to the remaining grounds, it recommends this Court deny the Petition on the merits (*id.*). Howell objects generally that the R&R "was illogically reached through formal & material fallacy" (Doc. 17 at 2). His specific objections are addressed below.

**Ground One: Expert Witness**

Howell argues his appellate counsel was ineffective for failing to raise -- on direct appeal -- the issue of whether his trial counsel was ineffective for not obtaining an expert witness. The R&R concluded that the Ohio court of appeals decision rejecting Howell's argument reasonably applied the *Strickland* standard, which requires Howell to prove: (1) "that [appellate] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) "there is a reasonable probability that, but for [appellate] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Kelly v. Lazaroff*, 846 F.3d 819, 831–32 (6th Cir. 2017).

Howell raised this appellate ineffective-assistance argument in his Rule 26(b) application, and the Ohio court of appeals denied his claim on the merits. This Court's review is therefore limited to determining whether the decision by the Ohio court of appeals was contrary to or an unreasonable application of Supreme Court precedent. *Id.* at 831.

Howell does not -- and cannot -- argue that the state court applied the wrong standard (*Strickland*) or that its conclusion is contrary to a Supreme Court decision made under materially

indistinguishable facts. Thus, he must show the state court's application of *Strickland* to the facts of his case was unreasonable. *Id.* His burden of proof on that issue is "extremely high." *Id.* Indeed, it is not enough to show merely that the court misapplied the law; rather, the court's decision "must have been 'objectively unreasonable.'" *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). In other words, all "fairminded jurists" would have to agree the state court's decision was wrong. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This is a "doubly deferential standard of review that gives both the state court *and* the defense attorney the benefit of the doubt." *Kelly*, 846 F.3d at 832 (quoting *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013)). Howell has not met that burden.

Indeed, Howell does not even discuss his appellate counsel's performance; rather his claim for appellate ineffectiveness appears to rely solely on an inference that, if his trial counsel was ineffective for failing to obtain an expert, his appellate counsel must have been ineffective for failing to raise the issue on appeal. Howell thus focuses his argument solely on the merits of his underlying claim for ineffective assistance of trial counsel.

But because that issue -- ineffectiveness of trial counsel -- was not presented on direct appeal, it is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Accordingly, this Court cannot grant relief unless it first finds Howell has demonstrated both cause for failing to raise the issue on direct appeal and resulting prejudice. *See Kelly*, 846 F.3d at 829.

Although ineffectiveness of appellate counsel can satisfy the cause-and-prejudice standard, "appellate counsel [cannot] be ineffective for failing to raise a meritless claim." *Id.* at 827. Thus, if Howell's underlying claim (trial counsel ineffectiveness) fails, so too does his argument for avoiding procedural default based on his appellate counsel's failure to raise the issue. For that reason, both the state court and the R&R rejected Howell's claim; each determined Howell's

3

underlying ineffective assistance claim lacked merit because he could not demonstrate he was prejudiced by not having an expert witness at trial. This Court agrees.

As an initial matter, Howell has not identified an expert willing to testify that "there is a great probability that [the victim's] injuries could have been self-inflicted" (Doc. 1 at 21). Rather, he merely argues that an unnamed "expert witness *could have* provided the jury with substantial information that *could have* proved the victim's minor injuries *could have* been induced from sleepwalking" (Doc. 14 at 11) (emphasis added). In other words, Howell merely speculates about the existence and efficacy of an expert. That falls short of proving either that his counsel failed to investigate a possible expert witness or that such failure prejudiced his case. *See Bragg v. Galaza*, 242 F.3d 1082, 1088–89 (9th Cir. 2001) ("[Petitioner] does nothing more than speculate that, if interviewed, [the witness] might have given information helpful to [Petitioner]. . . . We do not have before us evidence of [the attorney's] investigation, lack of investigation or his reasons for failing to investigate. On this record, we can only conclude that [Petitioner] has not made a sufficient showing of cause to demonstrate ineffective assistance of counsel for failure to investigate.").

Moreover, Howell provides no explanation as to why an expert was needed to explain that "minor injuries" (as Howell characterizes them) can be suffered while sleepwalking -- the fact that sleepwalking may result in injury is common knowledge easily understood by a lay juror. And while an expert could conceivably form an opinion about whether the victim's specific injuries were more consistent with sleepwalking than assault, Howell has not made that argument. Nor has he provided any evidence supporting such an opinion in this case. *See id.*

In any event, the jury heard testimony from the victim, Elishalin Robinson, providing most (if not all) of the information Howell argues should have been elicited through expert testimony -- that is, she testified about her medical conditions, the medications she takes, and the side effects she

4

experiences as a result. Specifically, Robinson testified she suffers from various conditions -- including PTSD, ADHD, anxiety, and manic depression -- for which she takes several medications (Doc. 10-2 at 176). Among the side effects she described are hallucinations, sleepwalking, unexplained bleeding, and unexplained bruising (*id.* at 181–83). She also testified she has a history of sleepwalking resulting in injury (*id.*). This evidence was not contradicted by the State, and the State likewise called no medical experts. Thus, at best, calling a medical expert to testify on these subjects would have served only to corroborate the victim's testimony.

The ultimate question for purposes of this Court's analysis is therefore whether "there is a reasonable probability" that, considering "the totality of the evidence before the jury," "the result of the proceeding would have been different" if corroborating medical testimony had been presented. *Strickland*, 466 U.S. at 687, 695. Both the state court and R&R answered "no," and those determinations were reasonable; at the very least, they were not "objectively unreasonable," such that all "fairminded jurists" would have to disagree. *See Harrington*, 562 U.S. at 101. Indeed, the evidence against Howell -- with or without corroborating testimony about the victim's medical history -- is compelling. Specifically:

- A neighbor testified that he awoke that night to the sound of a woman (Robinson) screaming for help (Doc. 10-2 at 146–49). After looking out the window and seeing an angry man pulling at the woman while calling her a "bitch," he called 911 (*id.*). Another neighbor awoke to the sound of someone (Robinson) pounding on her door, "crying help me" (*id.* at 153–55). She also called 911 (*id.*).

- Robinson made her own 911 call (*id.* at 164), and she told the responding officer that Howell -- who had since left the scene -- punched her in the face multiple times while she was lying on her couch (*id.* at 211–13). There were multiple bloodstains on the couch where Robinson alleged the assault occurred, along with blood on the floor surrounding the couch (*id.*). The police took pictures of Robinson's injuries, as well as the alleged crime scene (*id.* at 170). And, according to the responding officer, Robinson appeared sober, was not "mentally out of sorts," and was very afraid (*id.* at 216–17).

- The paramedic, who treated Robinson's injuries, was told by Robinson that Howell punched her in the face while she was sleeping on the couch (*id.* at 203). She also told him "she felt a pop in her nose when she was punched," and the paramedic's treatment notes indicated she was bleeding from her nose (*id.* at 204).

- The jury also heard testimony that, after Howell was arrested, he called Robinson (with whom he shares two children) from jail. In those calls, Howell told her to go to court and blame the incident on her medication (Doc. 10-1 at 54–55). More specifically, during one prison phone call, Robinson asked Howell how she could explain the pictures. Howell responded, "the medication" (Doc. 10-2 at 173). Robinson also told Howell during that phone call: "You shouldn't have done that dumb shit" (*id.*).

Howell's defense relied entirely on Robinson's testimony, where she contradicted her earlier statements to the police and paramedics. Consistent with her calls with Howell, Robinson attributed the incident to sleepwalking, her medical conditions, alcohol, and her medication. She testified that she had been sleepwalking on the night of the incident, and she woke up bleeding but did not know why (*id.* at 162–63, 167, 183). She further testified that, although Howell was there, she believes he was just trying to clean her up and calm her down, because she was "freaking out" (*id.* at 162–63, 167–68, 174, 180). She speculated her injuries must have been caused by a fall while sleepwalking, perhaps down the stairs (*id.* at 183–84). She admitted, however, that she may have told police, paramedics, and hospital personnel that Howell punched her in the face (*id.* at 167, 169–70). She explained that contradiction by suggesting she was confused when she made her original statements; at the time, she just assumed he hit her because he was there, and she did not know how she got her injuries (*id.* at 179–80).

Given the totality of the evidence, there is little reason to suspect the jury would have been swayed by a medical expert who "could have proved the victim's minor injuries *could have* been induced from sleepwalking" (Doc. 14 at 11) (emphasis added). On the contrary, the evidence strongly suggests Robinson's injuries were caused by Howell -- regardless of whether it was

6

medically possible they could have been caused by sleepwalking. Accordingly, the Ohio court of appeals did not unreasonably determine Howell suffered no prejudice by forgoing an expert witness.

**Ground Two: Moving for a Mistrial**

Howell argues that his appellate counsel was again ineffective for failing to raise the issue of trial counsel's ineffectiveness -- this time for failing to ask for a mistrial when the prosecution discussed Howell's previous domestic violence convictions. This argument is frivolous. As the R&R and state court correctly noted, proof of Howell's prior domestic violence convictions was required to satisfy the elements of the crime for which he was being tried. *See* R.C. 2919.25(D)(4). Thus, presenting evidence of those convictions was not grounds for a mistrial, and neither trial nor appellate counsel was ineffective for failing to make that argument.

**Ground Three: Prosecutorial Misconduct**

Howell again argues that his appellate counsel was ineffective for not raising the issue of his trial counsel's ineffectiveness -- this time for failing to object to alleged prosecutorial misconduct. Howell alleges: "[D]uring opening arguments the prosecutor would state to the jury that the victim is going to come in here and admit that she was not a victim of domestic violence and to disregard this information. The prosecution would further state this is what a typical victim of domestic violence does" (Doc. 17 at 7).

As the R&R correctly notes, the prosecution did not tell the jury to "disregard" the victim's testimony or mention "a typical victim of domestic violence" during its opening statement. But it did remark during closing arguments that "the reality is [in] domestic violence cases, [it is] not uncommon these victims come in and do what she did "(Doc. 10-2 at 250). Contrary to Howell's suggestion, however, his counsel *did* object to that statement (*id.*). And that objection was sustained (*id.*). Thus, trial counsel could not have been ineffective for failing to object.

Further, to the extent Howell argues his counsel should have objected to the prosecution asking the jury to use "reason and common sense" when assessing the credibility of Robinson's testimony, his argument is meritless -- that is the proper function of the jury. It was not improper for the prosecution to invite the jury to assess the credibility of Robinson's testimony, and neither trial nor appellate counsel was ineffective for failing to make that argument.

Finally, for the reasons stated earlier, trial counsel was not ineffective for failing to object to the trial court's references to Howell's prior domestic violence convictions.

**Ground Six: Due Process**

Howell contends his appellate counsel was ineffective for failing to argue that the State deprived him of due process by referencing his prior convictions, commenting about the frequency with which domestic violence victims change their stories, and telling the jury to disregard Robinson's testimony. As already discussed, it was not improper for the State to mention Howell's prior domestic violence convictions or ask the jury to assess the credibility of Robinson's testimony.

Howell's argument based on the prosecution's remark about domestic violence victims also fails. As the R&R correctly noted, Howell did not present this argument to the state court as part of a stand-alone due-process claim. Thus, it was procedurally defaulted, and Howell must show both cause and prejudice to overcome the default. The R&R determined he had not demonstrated either, and this Court agrees.

As an initial matter, Howell offers no explanation whatsoever for why he failed to raise this issue in state court. Unlike his other ineffective-assistance claims, this issue was not addressed in his Rule 26(b) application. Howell has the burden of showing cause, and he has not attempted to meet that burden.

Further, Howell has not shown he was prejudiced by the prosecutor's statement. In determining whether a prosecutor's improper statements require reversal (thus demonstrating prejudice), this Court must consider four factors: (1) "whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant"; (2) "whether the conduct or remarks were isolated or extensive"; (3) "whether the remarks were deliberately or accidentally made"; and (4) "whether the evidence against the defendant was strong." *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).

As outlined above, the evidence against Howell was substantial. There is little reason to suspect the jury would have acquitted Howell but for the prosecutor's isolated (and true) comment about the frequency with which domestic violence victims recant their allegations. The judge instructed, just before closing arguments, that "[t]he evidence does not include . . . closing arguments of counsel" (*id.* at 234). Further, defense counsel objected to the improper statement as soon as it was made, and the judge sustained the objection (*id.* at 250). Under the totality of the circumstances, the prosecutor's comment did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

**Ground Eight: Sufficiency of the Evidence**

Howell argues his conviction is against the manifest weight and sufficiency of the evidence. As an initial matter, the R&R correctly determined that Howell's argument based on the manifest weight of the evidence was not cognizable, and Howell does not object to that conclusion. Thus, that portion of Ground Eight must be dismissed.

Further, as discussed above, the evidence against Howell was substantial. The R&R correctly determined that, when viewing the evidence in the light most favorable to the prosecution,

9

a rational juror could conclude beyond a reasonable doubt that "the victim's behavior and statements (in addition to other evidence such as photos and the neighbors' 911 calls) on the night of the assault were more credible than her changed testimony" (Doc. 16 at 23).

## CONCLUSION

Having overruled each of Howell's objections (Doc. 17), this Court adopts the R&R (Doc. 16). The Petition is denied in part and dismissed in part, as outlined in the R&R. Further, this Court certifies that an appeal could not be brought in good faith, and there is no basis to issue a certificate of appealability. 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

August 28, 2017